**GAF CORPORATION, Appellant,**

v.

**TRANSAMERICA INSURANCE COMPANY.**

**GAF CORPORATION, Appellant,**

v.

**TRANSAMERICA INSURANCE COMPANY.**

Nos. 79–2560, 80–1473.

United States Court of Appeals, District of Columbia Circuit.

Argued March 25, 1981.

Decided Sept. 3, 1981.

Robert E. O'Malley, Washington, D. C., with whom Jan Schneider and John D. Field, III, Washington, D. C., were on the brief for appellant.

Laidler B. Mackall, Washington, D. C., with whom Loren Kieve, Washington, D. C., was on the brief for appellee.

Before ROBB and GINSBURG, Circuit Judges, SWYGERT*, Senior Circuit Judge for the Seventh Circuit.

Opinion for the Court filed by Senior Circuit Judge SWYGERT.

SWYGERT, Senior Circuit Judge:

Plaintiff-appellant GAF Corporation appeals from an order awarding attorneys' fees to the Transamerica Insurance Company after a voluntary dismissal by GAF of its actions against Transamerica and several other defendants. We agree that attorneys' fees should be awarded, but because the district court failed to explain how it had reached the award, we remand for a new determination of the amount.

## I

This long and acrimonious litigation has its roots in the manufacture, during the 1930's–1970's, of products containing asbestos, which is now known to cause cancer and asbestosis in human beings. The Ruberoid Company began to manufacture various products containing asbestos in 1937. GAF acquired Ruberoid in 1967, assuming thereby any liability Ruberoid might have incurred as a result of its earlier activities. Beginning in 1969, when the hazards of asbestos became widely known, various plaintiffs began suing GAF, seeking damages for personal injury, and in some cases death, allegedly resulting from the claimants' exposure to asbestos products manufactured by Ruberoid and GAF. By the mid-1970's, at least four hundred such suits had been filed.

In 1978, GAF brought suit in the United States District Court for the District of Columbia, seeking a declaratory judgment that three insurance companies (primary carriers) were obliged to defend and indemnify GAF in these tort suits. The defendants were Fireman's Fund Insurance Company (Fireman's Fund), Insurance Company of North America (INA), and Transamerica, the successor-in-interest to the American Surety Company of New York, which GAF alleged to have issued primary liability insurance to Ruberoid from 1951–53.

INA and Fireman's Fund filed answers to GAF's complaint, essentially admitting that they had insured GAF, and addressing only the major substantive issue: whether the date of the claimant's *exposure* to asbestos or the date of *manifestation* of asbestosis symptoms determines which insurance company must indemnify and defend GAF in each case.[1] Transamerica, however, moved

---

* Sitting by designation pursuant to 28 U.S.C. § 291(a).

1. The gravamen of the dispute is when the duty to indemnify and defend the policyholder accrues. GAF takes the position that the insurance company or companies that provided product liability coverage at any time during the period of a claimant's *exposure* to a manufacturer's asbestos products have the obligation to defend and indemnify claims.

Other insurers contend that the date of *manifestation* of symptoms is the determinative date. Under this theory, whichever insurance company happens to be providing coverage to

for summary judgment in June, 1978. It contended that a diligent search of its files had failed to turn up any evidence that American Surety had issued such a policy in 1951. GAF states that it has lost the actual policy, either through flood damage or through routine destruction of documents by GAF or Ruberoid.

No activity in the case occurred from June, 1978 to November, 1978. During this period, however, the number and dollar amount of the claims against GAF increased spectacularly; by late 1978, GAF faced nearly 750 claims, and it became likely that the dollar amount of these claims would reach the level at which some of GAF's "excess" general liability insurance carriers would be called upon to provide indemnification under their policies. Furthermore, GAF and one of the defendants, INA, agreed that an indispensable party had not been and could not be joined in the District of Columbia suit.[2]

On November 28, 1978, INA moved to dismiss the action for failure to join an indispensable party as required by Fed.R. Civ.P. 19(a) and (b). In lieu of answering the motion, GAF filed its own motion on December 8, 1978, asking the court to grant voluntary dismissal of the action pursuant to Rule 41(a)(2). In that motion, GAF admitted that Home Insurance Company (HIC) was probably an indispensable party at this point in the litigation, and that joinder of HIC would destroy diversity jurisdiction. GAF indicated that it had filed suit in New Jersey state court, in which all necessary parties could be joined.[3]

On December 12, 1978, only four days after GAF's motion for voluntary dismissal had been filed, and six days before the time had expired for parties to respond, the district judge granted GAF's motion to dismiss without prejudice, directing each party to bear its own costs.[4] On December 15, 1978, three days before the time to respond expired, Transamerica filed an opposition to GAF's motion for voluntary dismissal, along with an opposition to INA's earlier motion to dismiss for lack of an indispensable party.[5] Transamerica argued that HIC was not an indispensable party and that GAF should not be allowed to deprive it of a judgment on the merits of its summary judgment motion. It added that any disposition of the case should be on the merits rather than a voluntary dismissal or dismissal for lack of subject matter jurisdiction.

On December 19, 1978, Transamerica filed a motion for reconsideration of the December 12 order dismissing the case without prejudice. The court held oral argument on that motion on January 29, 1979. At that hearing, the judge vacated the earlier dismissal order and heard argument on Transamerica's motion for summary judgment, as well as on GAF's renewed motion

GAF at the date of manifestation of asbestosis symptoms is the only insurer with the duty to defend and indemnify, even though the tortious exposure to the product might have occurred some twenty years earlier. This dispute is the subject of a number of suits pending throughout the country at this time. *See, e. g., Keene Corp. v. Insurance Co. of North America*, No. 78–1011 (D.D.C. June 6, 1978)

2. Home Insurance Company, GAF's primary carrier from 1975 to the present, was not joined in the original case, apparently because, under GAF's "exposure theory" of insurance company liability, HIC would never be liable to defend GAF in any asbestos-related suits, since GAF ceased manufacturing products containing asbestos in 1975. To join HIC in the instant suit would have destroyed diversity, since GAF and HIC are both New York corporations. For

these reasons, GAF and INA decided that dismissal was preferable.

3. GAF joined INA, Fireman's Fund, Transamerica, and all of its other excess and primary insurers, in New Jersey state court. Since then, the New Jersey action has been dismissed for failure to state a justiciable controversy under the New Jersey declaratory judgment act. The case has been refiled in California state court, and discovery is proceeding.

4. Transamerica alleges that it did not even receive notice of the court's dismissal order until December 19.

5. Since INA's motion was filed on November 28, this opposition was untimely filed.

for voluntary dismissal. On February 12, 1979, the court denied Transamerica's motion for summary judgment and again dismissed the case without prejudice. The court treated the dismissal as voluntary under Rule 41(a) and not as an involuntary dismissal for lack of jurisdiction. The jurisdictional issue was not discussed. No fees or costs were awarded by this order.

Transamerica filed a notice of appeal, and GAF subsequently filed a motion for summary affirmance which this court granted by a *per curiam* order dated July 26, 1979. In that order, a motion panel granted the motion "without prejudice to the right of Transamerica Insurance Company to move in the District Court for costs and attorneys' fees within twenty days, if Transamerica so desires. For this purpose only the case is remanded."

On August 15, 1979, Transamerica filed a motion with the district court for attorneys' fees and costs associated with the voluntary dismissal of GAF's suit against it, arguing that the case was "misbegotten" and vexatious. Transamerica asserted that GAF knew from the beginning that it had no evidence of the specific terms and conditions of the policy by which American Surety, Transamerica's predecessor-in-interest, allegedly insured Ruberoid. Therefore, Transamerica claimed, GAF's suit was not brought in good faith. GAF responded to Transamerica's motion on September 10, arguing primarily that Transamerica was not entitled to attorneys' fees because it had failed to move for attorneys' fees in the past, and because many of the expenses incurred were "self-initiated" rather than "responsive." The district court ordered GAF to pay Transamerica $37,258.75 in attorneys' fees and $1,579.43 in costs for defending the declaratory judgment action brought by GAF and later "voluntarily" dismissed. GAF appealed this award.

On March 7, 1980, GAF filed a motion in the district court to reconsider the award of attorneys' fees to Transamerica. GAF based this motion upon "newly discovered evidence" that Transamerica allegedly knew or should have known that American Surety had in fact insured Ruberoid during the disputed period and that relevant documents and information were withheld from the plaintiffs in bad faith. GAF argued that Transamerica's actions amounted to fraud or misrepresentation within the meaning of Fed.R.Civ.P. 60(b), and that in light of these new facts, an award of attorneys' fees against GAF was without a reasonable basis. On April 24, 1980, the district court denied GAF's motion without oral argument. GAF appealed the denial of its motion for reconsideration. The two appeals were consolidated by order of this court.

## II

■ Upon remand, the district court awarded attorneys' fees pursuant to authority granted it in Rule 41(a)(2) of the Federal Rules of Civil Procedure. That rule provides, in relevant part, "[A]n action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." The purpose of the "terms and conditions" clause is to protect a defendant from any prejudice or inconvenience that may result from a plaintiff's voluntary dismissal.[6] Attorneys' fees and costs are commonly awarded as one such "term and condition" for a voluntary dismissal, for those costs were undertaken unnecessarily in such a case.[7] A plaintiff does not, however, lose all right to challenge the conditions imposed. Under the rule, a plaintiff has the choice between accepting the conditions and obtaining dismissal and, if he feels that the conditions are too burdensome, withdraw-

---

6. *Yoffe v. Keller Ind., Inc.*, 580 F.2d 126, 129 (5th Cir. 1978), *cert. denied*, 440 U.S. 915, 99 S.Ct. 1231, 59 L.Ed.2d 464 (1979); 9 Wright & Miller, *Federal Practice and Procedure*, § 2366, p. 177 (1971).

7. *See LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 603 (5th Cir. 1976); Wright & Miller, *supra*, pp. 178–79.

ing his dismissal motion and proceeding with the case on the merits. Our scope of review is narrow in such cases. The trial court's determination of "terms and conditions" may be overturned only if the court abused its discretion.[8]

■ GAF makes several contentions on appeal. First, it argues that an award of attorneys' fees is not proper when the plaintiff's motion for voluntary dismissal is based on the court's probable lack of jurisdiction. If the court has no jurisdiction, then dismissal is not truly voluntary. Dismissal is required, and it would be "inappropriate for the court to engage in the balancing process required by Rule 41(a)(2)."[9] This circuit has never decided if "terms and conditions" could be imposed if a voluntary dismissal is based on a lack of jurisdiction, but this case is not the one to decide the issue. GAF did not raise this issue in the district court. It is well established that appellate courts should avoid the consideration of defenses never raised in the trial court,[10] for any such decision would be without the benefits of a developed factual record.[11] We therefore refrain from deciding this issue at this time.[12]

■ GAF next contends that because of the timing of the award of attorneys' fees in this case, the "terms and conditions" clause of Rule 41(a)(2) is inapplicable. Unlike most voluntary dismissals, the fees were awarded here after the case had been dismissed instead of beforehand. GAF did not have the ordinary choice available to plaintiffs either to accept the conditions or to withdraw the motion for voluntary dismissal. GAF argues that it relied upon the dismissal without any conditions attached, and to award them now is unfair to it. We do not believe, however, that the late award in this case has worked any prejudice upon GAF. GAF itself initiated the dismissal so that it could file another action in a court where it could gain jurisdiction over all of its insurers, primary and secondary.[13] Because GAF needs to have all of its insurers together in one jurisdiction in order to ensure that its potential liabilities of many millions of dollars are completely covered, it is highly unlikely that GAF would have withdrawn its dismissal motion rather than pay the $39,000 attorneys' fees now award-

---

**8.** *LeCompte, supra,* at p. 604; *Hoffmann v. Alside, Inc.,* 596 F.2d 822 (8th Cir. 1979); *Sams v. Beech Aircraft Corp.,* 625 F.2d 273 (9th Cir. 1980). GAF agrees that this standard is correct, but contends that the district court exercised *no* discretion because it relied completely on the previous ruling of this court. This argument, which does not affect the standard or method review here, is treated *infra,* n.20.

**9.** *In re Federal Campaign Act Litigation,* 474 F.Supp. 1051, 1053 (D.D.C.1979). *See also Hylte Bruks Aktiebolag v. Babcock & Wilcox Co.,* 305 F.Supp. 803, 809 (S.D.N.Y.1969).

**10.** *See, e.g., United States v. Estate of Donnelly,* 397 U.S. 286, 295, n.5, 90 S.Ct. 1033, 1038, n.5, 25 L.Ed.2d 312 (1970); *American Lease Plans, Inc. v. Houghton Construction Co., Inc.,* 492 F.2d 34, 37 (5th Cir. 1974); *Hilton v. Mumaw,* 522 F.2d 588, 595, n.6 (9th Cir. 1975). The same rule applies to claims not raised in the trial court. *Merrill Tenant Council v. HUD,* 638 F.2d 1086, 1093–94 (7th Cir. 1981); *Daughtry v. King's Dept. Stores, Inc.,* 608 F.2d 906, 909 (1st Cir. 1979); *Gibson v. Kroger Co.,* 506 F.2d 647, 653 (7th Cir. 1974), *cert. denied,* 421 U.S. 914, 95 S.Ct. 1571, 43 L.Ed.2d 779 (1975).

**11.** We note that the district court never found that the court lacked jurisdiction, and we can-

not assume at this point in the litigation that that reason was the principal one for the dismissal. Moreover, there would be a factual dispute concerning the extent of GAF's knowledge at the time of filing of the suit that HIC was an indispensable party. If GAF knew that it should have joined HIC at that time, then it should be responsible for Transamerica's costs even though lack of jurisdiction was the basis for the dismissal, since it was the party at fault. "An *involuntary* dismissal without prejudice may also be subject to court prescribed conditions." 5 Moore's *Federal Practice* ¶ 41.06, p. 41–91 (1980) (emphasis in original).

**12.** A remand is not necessary to determine this issue now. It is not too heavy a burden to require that a plaintiff who gains a voluntary dismissal for lack of jurisdiction must obtain such a finding in the record. GAF could have done just that when the dismissal order was reinstated, and, as noted above, it did not even press this argument in the district court on remand.

**13.** GAF admitted in its motion for voluntary dismissal that it had "concluded that all of its insurers should be joined in one action in order to resolve the controversy as expeditiously as possible." [GAF App., p. 98.]

ed.[14] The dismissal was therefore no less voluntary simply because the award followed the entry of the dismissal order.

GAF also argues that because of its "good faith" in seeking a prompt dismissal, as indicated in the district court's dismissal order of February 12, 1979,[15] the court's award of attorneys' fees was an abuse of discretion. Good faith, however, is simply irrelevant to an award of attorneys' fees or the imposition of any other "terms and conditions" under Rule 41(a)(2). As noted above, the purpose of the rule is to protect defendants from undue prejudice or inconvenience caused by a plaintiff's premature dismissal. No matter how conscientious and diligent GAF may have been, Transamerica suffered some costs by defending this action in the District of Columbia before it was moved elsewhere, and Transamerica is entitled to such reimbursement of those costs as the court may order.[16]

■ Because the district court's dismissal order concluded this action but did not end the litigation between the parties, GAF argues that Transamerica is not entitled to reimbursement for any expenses incurred in preparing work product that will be useful in the ongoing litigation in California.[17] We agree that payment for any such expenses would amount to a windfall to Transamerica. The issues in the California state proceeding are closely related to those that were in dispute in this action, and Transamerica will undoubtedly be able to utilize much of the evidence developed through discovery here. For example, the work performed in preparing Transamerica's motion for summary judgment was probably very useful in presenting the same motion when the litigation moved to California. Affidavits prepared in this action may also be helpful. Transamerica is entitled only to those costs incurred in making appearances in the district court prior to dismissal [18] and in preparing any work prod-

14. GAF also argues that it would at least have taken the time to attempt to prove to the court that it lacked jurisdiction if the award had been made contemporaneous to the dismissal. As noted, *supra*, n.12, if GAF's actions were the cause of the problem, fees may have properly been awarded to Transamerica even if the court held it had no jurisdiction. More important, Transamerica requested "actual costs and expenses, including attorneys' fees" on December 15, 1978, two months before the district court's final dismissal order of February 12, 1979. [GAF App., p. 108.] GAF thus had prior notice of the request and could have protected itself against paying costs at the time of the final dismissal. It simply failed to do so.

15. The district court, in its Memorandum Opinion and Order, dated February 12, 1979, found that

[T]his action has not progressed beyond the initial stages; plaintiff has supplied a sufficient reason for seeking dismissal; there has not been excessive delay or lack of diligence on the part of plaintiff; and defendant Transamerica will not suffer an undue burden by presenting its motion [for summary judgment] in another jurisdiction and will not be otherwise prejudiced by the dismissal of this action.... Additionally, it is in the best interest of all parties for this case to be decided by one court where all parties and issues can be joined in a single action.

16. GAF cites *Blackburn v. City of Columbus*, 60 F.R.D. 197 (S.D. Ohio 1973), in support of

this and several other contentions. In that case, the court simply held that it did not abuse its discretion when it did not order payment of attorneys' fees as a condition for a Rule 41(a)(2) dismissal. The case is therefore not authority to require a holding here that the court abused its discretion when it *did* order payment of costs. Moreover, *Blackburn* was based in part on the principle that, "in the absence of specific statutory authority," the court should not depart from the American rule not to award attorneys' fees. This holding ignores the fact that Rule 41(a)(2) has the same force as any statute of the United States. 28 U.S.C. § 2072.

17. *GAF v. Insurance Company of North America*, No. C286217 (Superior Court of Los Angeles County, California; filed May 31, 1979). Trial in this suit has not occurred.

18. By "dismissal," we mean the court's final order of February 12, 1979. GAF complains that many of Transamerica's costs were self-incurred because of the "blizzard of paper" filed by Transamerica following the premature dismissal by the district court on December 12, 1978. Because the district court had acted before Transamerica's time to respond had expired, Transamerica was perfectly within its rights to file those motions and other papers. No "blizzard" would have occurred had GAF not resisted Transamerica's quite proper application to be heard on GAF's request to dismiss the case without prejudice from other expenses incurred.

uct, whether it be evidence or motion papers, that was rendered useless by the dismissal of this action.

The district court did not itemize its award of attorneys' fees and costs, so we cannot know how much of that award may have been for work that is useful elsewhere.[19] We therefore remand this case to the district court for a hearing on the amount of attorneys' fees and costs that should properly be awarded to Transamerica under the standards set out above. If it develops on hearing that the work of counsel in the District of Columbia case is of no value in the subsequent litigation, then the $39,000 award should be maintained, but the award should be reduced for any other work. The basis for the award should be specifically delineated.[20]

## III

GAF also appeals from the denial of its motion for reconsideration. This motion was based on new evidence discovered in related court proceedings between these same parties in the United States District Court for the Eastern District of Virginia.[21] During pretrial discovery, GAF deposed the seven Transamerica employees whose affidavits had been offered with Transamerica's motion for summary judgment to prove that after a "diligent" search, Transamerica could not locate any evidence of the policy allegedly issued by its subsidiary, American Surety Company. These depositions revealed that the search for the American Surety policy may not have been as thorough as Transamerica contended. GAF moved immediately, on March 7, 1980, for reconsideration of the award of attorneys' fees and costs pursuant to Fed.R.Civ.P. 60(b).[22] The district court denied GAF's motion without oral argument on April 23, 1980.[23]

■ The denial of a Rule 60(b) motion may be overturned only if the district court abused its discretion,[24] and it did not do so in this case. While Transamerica's affidavits and other supporting papers for its summary judgment motion may have been

19. GAF argues that the lack of explanation for the district court's award demonstrates that the court did not exercise any discretion at all but rather only followed what it perceived to be the mandate of this court to award costs and attorneys' fees. As noted above, *supra*, pp. 367–368, a motions panel of this court summarily affirmed the voluntary dismissal by GAF, "without prejudice to the right of Transamerica Insurance Company to move in the District Court for costs and attorneys' fees within twenty days, if Transamerica so desires." While the wording of that order may have been ambiguous, it certainly stated no opinion as to the outcome of such a motion. It merely remanded the case so that Transamerica could pursue its previously-filed request for costs. *See supra*, n.15. Remands like this one are common, and we believe that a district judge would understand it to *permit* the award of costs, not to *require* it. The district court's decision to grant costs and attorneys' fees was not an abuse of discretion.

20. No costs or fees should be awarded for this appeal.

21. Transamerica filed this action against GAF for malicious prosecution, Civ. No. 79–811–A, on September 24, 1979, after the dismissal of the District of Columbia's action but before the awarding of attorneys' fees. On November 4,

1980, the district court informed the parties by letter that it would dismiss the action, as it felt the issues raised were best decided in the California state action.

22. Fed.R.Civ.P. 60(b) provides in relevant part:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

... (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; ...

23. GAF simultaneously moved for its own award of attorneys' fees and costs pursuant to Fed.R.Civ.P. 56(g). This motion was also denied.

24. *Harjo v. Andrus*, 581 F.2d 949 (D.C.Cir. 1978); *Smith v. Widman Trucking & Excavating, inc.*, 627 F.2d 792 (7th Cir. 1980); *Gary W. v. Louisiana*, 622 F.2d 804 (5th Cir. 1980), *cert. denied*, 450 U.S. 994, 101 S.Ct. 1695, 68 L.Ed.2d 193 (1981). *Cf. D. C. Federation of Civil Associations v. Volpe*, 520 F.2d 451 (D.C.Cir.1975).

less than entirely accurate,[25] GAF failed to demonstrate that they amounted to misrepresentation that required relief under Rule 60(b)(3). The full texts of the depositions reveal that the Transamerica employees searched only those files that they thought might reasonably contain the sought-after American Surety policy. Such a search, though perhaps not the "diligent search and inquiry" claimed by Transamerica, is all that could be expected of Transamerica under the circumstances. Viewed as a whole, Transamerica's supporting papers are not therefore so misleading that GAF was prevented from "fully and fairly presenting [its] case."[26]

■ GAF further contends that its discovery of a letter dated March 3, 1952, from American Surety to Ruberoid, which refers to three policies by number, amounts to "newly discovered evidence" that warrants relief under Rule 60(b)(2).[27] This letter is new evidence that seems to indicate that American Surety had issued a comprehensive general liability policy to Ruberoid, which Transamerica has so far denied. Not just any new evidence, however, requires relief under Rule 60(b)(2). Whether American Surety had issued a policy to Ruberoid was irrelevant to the award of costs and attorneys' fees in this case. That award was based upon the fact that Transamerica had undergone some expense in defending itself against GAF's action in the district court here. Transamerica is entitled to recovery of those costs, as noted in Part II above, since they were solely the result of GAF's decision to file and then to dismiss voluntarily the action here. The award of costs and attorneys' fees has nothing to do with the eventual outcome of this case on the merits, so it would not have been affected if the 1952 letter had been discovered at an earlier stage in this litigation. The district court was therefore correct in denying GAF's motion for reconsideration on the basis of "newly discovered evidence."

The decisions of the district court to award attorneys' fees and costs and not to reconsider that award are affirmed. The action is remanded so that the district court may make a new determination of the amount of that award, consistent with the principles expressed in Part II of this opinion.

---

**25.** Neither party in this action is innocent of making assertions that present something less than an accurate statement of the facts. We view such inaccuracies with disfavor.

**26.** *Montgomery v. Hall,* 592 F.2d 278, 278–79 (5th Cir. 1979). The district court's denial of

GAF's Rule 56(g) motion is affirmed for the same reasons.

**27.** The letter simply states, "Attached are copies of worksheets pertaining to policies WC 122–79846, EM 122–47416 and CGL 122–79314."