**VICTORY BEAUTY SUPPLY, INC., Plaintiff,**

v.

**LA MAUR, INC., Defendant.**

**No. 81 C 5175.**

United States District Court, N.D. Illinois, E.D.

June 8, 1983.

Charles A. Laff, Martin L. Stern, Margaret M. O'Brien, Laff, Whitesel, Conte & Saret, Chicago, Ill., for plaintiff.

Charles A. Mays, Robert L. DeMay, Leonard, Street & Deinard, Minneapolis, Minn., Timothy J. Carey, Thomas F. Ryan, Sidley & Austin, Chicago, Ill., for defendant.

MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Defendant Lamaur, Inc. ("Lamaur")[1] has filed an amended counterclaim (the "Counterclaim") against plaintiff Victory Beauty Supply, Inc. ("Victory"), alleging Victory unlawfully sold Lamaur "restricted use" products to the general public. Lamaur now moves under Fed.R.Civ.P. ("Rule") 41(a)(2) and 41(c) for unconditional dismissal of its Counterclaim without prejudice. For the reasons stated in this memorandum opinion and order, dismissal without prejudice is allowed—but on condition of Lamaur's payment of Victory's litigation expense that (1) was caused by the Counterclaim and (2) did not involve activity usable if Lamaur's claim were renewed.

Lamaur seeks dismissal because of its belief—based on discovery to date—that Victory "has probably maintained, and taken reasonable steps to police, a policy prohibiting the sale of restricted use products to non-professionals" (Mem. 4). But because it considers that discovery too limited for a definitive assessment of the Counterclaim's merits, Lamaur asks dismissal without prejudice.

Rule 41 prescribes two avenues for voluntary dismissal of counterclaims:

1. Under Rule 41(c) the claimant may dismiss its counterclaim without court order "before a responsive pleading is served or, if there is none, before the introduction of evidence at the trial or hearing."

2. Otherwise Rule 41(a)(2) (made applicable to counterclaims by Rule 41(c)) specifies voluntary dismissal can be effected only "upon court order and upon such terms and conditions as the court deems proper."

Because Victory has filed a responsive pleading, only the Rule 41(a)(2) route is available.

■ Case law dictates a two-part inquiry under Rule 41(a)(2):

(1) whether voluntary dismissal without prejudice[2] is inappropriate under any circumstances, regardless of any curative "terms and conditions" that could be imposed; and

(2) if not, whether any terms and conditions should be imposed on dismissal in this instance.

These questions will be dealt with in turn.

As for the first, courts have generally allowed dismissal unless the other side "will suffer some plain legal prejudice other than the mere prospect of a second lawsuit"—prejudice that cannot be "avoided by imposing terms and conditions on the dismissal." 9 Wright and Miller, *Federal Practice and Procedure* § 2364, at 165, 172 (1971). Victory asserts no such "legal prejudice."[3] Instead it urges Lamaur's bad faith in raising the Counterclaim precludes dismissal without prejudice.

■ For present purposes it will be assumed a showing of bad faith could wholly defeat Lamaur's dismissal motion.[4] But Victory has failed to supply the requisite proof. Though Judge Learned Hand's famous "twenty bishops"[5] could not know

1. Defendant recently changed its corporate name from La Maur Inc. to Lamaur Inc. Consequently only the caption retains the original spelling.

2. For convenience the shorthand term "dismissal" will hereafter denote "voluntary dismissal without prejudice"—unless a different usage is expressly stated.

3. Victory does claim prejudice in the practical sense: its inability to recover legal expenses incurred in resisting the Counterclaim. Such asserted prejudice can be readily dealt with at the second level of inquiry (for example, by an order for reimbursement). *See Pittsburgh Jaycees v. United States Jaycees,* 89 F.R.D. 166, 167 (W.D.Pa.1981).

4. Victory could have advanced that contention in a Rule 41(b) *involuntary* dismissal motion. Under that provision (also made applicable to counterclaims under Rule 41(c)) a counterclaim defendant may move for involuntary dismissal "[f]or failure of the [counterclaimant] . . . to comply with these rules. . . ." Because bringing a counterclaim in bad faith offends Rule 11, Victory's charges to that effect could be raised in a Rule 41(b) motion. It would be anomalous thus to permit an offensive use of bad faith on Victory's own motion, but not in response to Lamaur's motion.

5. *Hotchkiss v. National City Bank,* 200 F. 287, 293 (S.D.N.Y.1911), *aff'd,* 201 F. 664 (2d Cir. 1912), *aff'd,* 231 U.S. 50, 34 S.Ct. 20, 58 L.Ed. 115 (1913).

just what really triggered Lamaur's decision to file the Counterclaim,[6] this Court has been tendered two possible underpinnings by Lamaur:

1. In 1976 or 1977 Lamaur employees, posing as nonprofessional customers, were able to purchase restricted use products from the stores of Victory's wholly-owned subsidiary, Bee Discount Company ("Bee").

2. In October 1980 then Lamaur Vice-president Frank J. Liguori ("Liguori") received letters (the "October letters") from two salons accusing Bee of selling restricted use Lamaur products to the general public.[7]

Lamaur's story may be pretty thin. Victory has taken the deposition of Liguori (who just resigned April 15, 1983 as a Lamaur director and as Vice-President of its Salon Division), during which he identified *only* the 1976 or 1977 shopping test as reflecting the kinds of sales complained of in the Counterclaim. Liguori referred not at all to the October letters or to the other matters mentioned in n. 7. Indeed neither the senders of the October letters nor Gerhardt ever responded to Liguori's open invitation to provide hard evidence of offending sales by Bee. Nor did Liguori refer to any

other sources of information coming to him between 1977 and 1981 (just after the Counterclaim was filed), when another shopping check of Bee Stores showed "at that point we were unable to purchase restricted use products in the Bee Stores so the policy at the Bee Stores had obviously changed" (Dep. c). And this was though he said he thought Lamaur had checked on Bee in the interim (*id.*):

Q. Did you send someone in the Bee Store?

A. I think from time to time our salespeople did, and in fact our primary request was that a nonprofessional be requested to go, and since many of our people are professionals at times we have had them contact someone to make a purchase.

It was with such scanty support Liguori and Lamaur's President authorized the counterclaim (*id.* at d):

Q. Was the basis for your filing that counterclaim or authorizing the filing of that counterclaim the testimony that you have just provided about the sale of restricted use products in the mid '70's by Bee?

A. Yes.

---

**6.** Both parties agree the Counterclaim was not compulsory under Rule 13(a), for it did not "arise out of the transaction or occurrence that is the subject matter of the [Complaint]."

**7.** Lamaur's vigorous contentions as to its bona fides are not assisted by some of its efforts on the present motion:

1. It points to the allegation in Complaint ¶ 17 that "Victory [through Bee] sells beauty supplies through cash and carry discount stores to beauty professionals and the general public." That argument is nonsense. Lamaur acknowledges (and indeed said in its responses to the October letters) that the antitrust laws foreclose it from preventing the cut-rate sales of *non*-restricted use products to the general public, the plain subject of Complaint ¶ 17. That allegation cannot be contorted into an admission Bee was marketing restricted use products to nonprofessionals.

2. It also puts forth a February 5, 1979 letter from Gerhardt Enterprises, Inc. (the "Gerhardt letter") to Liguori, claiming Bee was advertising professional beauty supplies to retail consumers. But Lamaur did not

provide this Court with Liguori's March 14, 1979 response to the Gerhardt letter, which made the same acknowledgement (referred to in the preceding paragraph) about the permissibility of Bee's sales of non-restricted-use products to the public and then pointed out the particular Bee advertisement attached by Gerhardt did not mention any restricted use merchandise. That response, produced by Lamaur during discovery, had to be furnished this Court by Victory.

3. It also did not provide this Court with its responses to the October letters, which not only explained the restricted v. non-restricted distinction but invited the complainants to shop Bee in an effort to test its willingness to sell restricted products to nonprofessionals. Again it fell to Victory to inform this Court fully by tendering the letter.

4. Its counsel also referred to "oral reports" as to Victory's indiscriminate sales of restricted use products to the public. No evidentiary support has been adduced for counsel's assertion.

Nonetheless this Court will give Lamaur the benefit of the doubt and will not ascribe bad faith to Lamaur. It had a reasonable suspicion, and it was obviously hoping it would hit pay dirt via discovery.

■ Having thus declined Victory's invitation that would condemn Lamaur's motion outright, this Court moves to the second inquiry: whether dismissal should be conditional in any respect. "Terms and conditions" may be imposed under Rule 41(a)(2) to the extent necessary to protect a defendant (or counterclaim defendant) from prejudice or inconvenience stemming from the dismissal. *GAF Corp. v. Transamerica Insurance Co.*, 665 F.2d 364, 367 (D.C.Cir. 1981) (Swygert, J.).

Victory asks payment of attorneys' fees and costs as the measure of the prejudice and inconvenience it has suffered. It is true such litigation expenses were really caused by the *filing* and not just the *dismissal* of the Counterclaim. And it is also true the American Rule normally precludes the award of fees for simply prevailing in litigation. But *GAF*, 665 F.2d at 369 n. 16 teaches Rule 41(a)(2) itself provides the necessary authority for departure from the common law American Rule.

**8.** *See,* 9 Wright and Miller § 2366, at 179–80 ("It is somewhat anomalous to require payment of an attorney's fee if the plaintiff would not have been liable for the fee had he lost the case on the merits—but the cases support this result"); *Lunn v. United Aircraft Corp.*, 26 F.R.D. 12, 18 (D.C.Del.1960) ("Something might be said as to the anomaly of the defendant obtaining much more in a voluntary dismissal than he could have recovered after a successful trial at length").

**9.** Lamaur asserts the troublesome proposition that it can learn this Court's position and *then* decide what it wants to do—effectively converting a decision into a mere advisory opinion (R.Mem. 2):

> The sole issue raised by Victory's opposition to La Maur's motion is whether or not the court should condition a dismissal of the counterclaim without prejudice upon La Maur's payment of Victory's costs and attorneys' fees. However, if the court does do so, La Maur retains the option to continue to prosecute the counterclaim rather than make such a payment.

Accordingly this Court will follow the weight of authority that permits the conditioning of dismissal on the payment of attorneys' fees and expenses. *See e.g. GAF*, 665 F.2d at 367–70; *LeCompte v. Mr. Chip, Inc.*, 528 F.2d 601, 603 (5th Cir.1976); *American Cyanamid Co. v. McGhee*, 317 F.2d 295, 298 (5th Cir.1963); *Pittsburgh Jaycees*, 89 F.R.D. at 168; *Bready v. Geist*, 85 F.R.D. 36, 37–38 (E.D.Pa.1979); *Kolman v. Kolman*, 58 F.R.D. 632, 633–34 (W.D.Pa. 1973). Nor is this Court troubled, under the circumstances of this case (see, e.g., n. 7), by the criticism occasionally leveled at that weight of authority.[8] Both parties acknowledge this is a discretionary area, and a balancing of the relevant considerations favors Victory.

### Conclusion

Lamaur's motion for dismissal of its Counterclaim without prejudice is granted, and the Counterclaim will be dismissed, upon condition that Lamaur pay Victory's attorneys' fees and expenses that would not have been incurred but for the Counterclaim and that did not involve activity usable if the Counterclaim were reasserted later.[9] Victory is directed to file on or before June 29, 1983 a detailed statement of its claim in that respect (including time spent

*GAF*, 665 F.2d at 367–68 contained language to that effect, but it spoke there of a plaintiff that was going forward with its claim in any event—the only question was which forum it would choose for that purpose. Here, by contrast, Lamaur has acknowledged the reason it is dropping the Counterclaim is that it now has no basis for pursuing it at all. It should not have the "option" it describes, even in the Holmesian sense of the "right" to breach a legal duty by being willing to pay the price of doing so. Nonetheless this Court will follow the *GAF* lead and will formally dismiss the Counterclaim unless Lamaur withdraws its motion on or before June 15, 1983 (that early date is intended to spare Victory the expense of preparing its statement of fees and expenses if Lamaur withdraws its motion). In making its decision about whether "to continue to prosecute the counterclaim," Lamaur should be aware there are of course remedies available against litigants (and their counsel) that pursue claims they know to be invalid.

by counsel, the hourly rates requested and sufficient information about the lawyers involved to permit evaluation of the reasonableness of those rates). Lamaur is directed to file on or before July 12, 1983 a statement of (1) the matters in Victory's claim it contests and (2) which of such matters will require an evidentiary hearing.