**MULAY PLASTICS, INC., Plaintiff,**

**v.**

**GRAND TRUNK WESTERN RAILROAD CO., et al., Defendants.**

**No. 82 C 7631.**

United States District Court, N.D. Illinois, E.D.

May 8, 1984.

Eric N. Landau, Francis X. Grossi, Jr., Katten, Muchin, Zavis, Pearl & Galler, Chicago, Ill., for plaintiff.

James A. Romanyak, Steven M. Polick, Schlegel & Trafelet, Chicago, Ill., for Grand Trunk Western R. Co.

MEMORANDUM OPINION
AND ORDER

SHADUR, District Judge.

On September 30, 1983 Mulay Plastics, Inc. ("Mulay") obtained summary judgment under Fed.R.Civ.P. ("Rule") 56 against Grand Trunk Western Railroad Co. ("Grand Trunk") on the issue of Grand Trunk's liability for damages sustained by its NATCO 1200 V–103 Injection Molding Machine (the "Machine") while in transit on a Grand Trunk flatcar.[1] Though Mulay

---

1. This Court found Mulay entitled to summary judgment as to liability in its memorandum opinion of that date (the "Opinion").

also contends Grand Trunk is liable under state law for negligence, the Opinion dealt only with Grand Trunk's liability under the Carmack Amendment, 49 U.S.C. § 20(11).[2]

Later events have called into question the propriety of that summary judgment, at the same time triggering the attorneys' fees problem now before this Court:

1. On February 8, 1984 (during discovery on the issue of damages) Robert L. Wehrley ("Wehrley"), a former employee of the Machine's manufacturer National Automatic Tool Co. ("National"), testified to events that may afford Grand Trunk a defense against Carmack Amendment liability.

2. On February 17 Grand Trunk moved to vacate the Opinion, relying principally on Wehrley's testimony.

3. On February 29 Mulay moved for a "protective order" prohibiting Grand Trunk "from introducing any deposition testimony pertaining to the issue of Grand Trunk's liability to Mulay obtained subsequent to ... September 30, 1983."

4. On March 16 this Court denied that motion and granted Grand Trunk's motion to vacate, conditioned on Grand Trunk's payment to Mulay of the expenses of its Carmack Amendment summary judgment motion.

5. On April 5 Grand Trunk moved for "reconsideration and/or clarification" of the order requiring it to pay expenses incurred by Mulay, and this Court denied that motion.

At this point Mulay has filed its petition for expenses, Grand Trunk has responded and Mulay has replied. Grand Trunk's response continues its opposition to the propriety of an award of expenses in this situation. Accordingly this opinion and order memorializes the legal justification for this Court's earlier actions (previously stated orally) and requires Grand Trunk to pay Mulay $3,820.70.

*Motion To Vacate Summary Judgment*

When Grand Trunk first produced Wehrley's deposition, the parties framed the issue in terms of whether or not the Opinion should be vacated.[3] Because the Opinion was not a final order, this Court of course has power to vacate it (and to that extent the parties agree). See *John Simmons Co. v. Grier Brothers Co.*, 258 U.S. 82, 88, 42 S.Ct. 196, 198, 66 L.Ed. 475 (1922). Whether this Court ought to exercise its discretion to do that depends on the circumstances.

*Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va. 1983) points out motions for reconsideration of interlocutory orders are non-Rules motions that are seldom appropriate. Nevertheless it notes (citing Judge Cardozo) the classic case in which reconsideration is appropriate is that of "the defeated party who acquires favorable evidence after the ruling." That however does not end the inquiry. In *O'Byrne v. Cheker Oil Co.*, 727 F.2d 159, 167 (7th Cir.1984) our Court of Appeals recently upheld this Court's denial of reconsideration of a sum-

**2.** In addition to Mulay's claims against Grand Trunk, this litigation includes:

  1. Mulay's claims against Dobson Heavy Haul, Inc. ("Dobson"), the trucking company that delivered the Machine to Grand Trunk, for negligence and breach of contract in connection with Dobson's fastening the Machine to Grand Trunk's flatcar;

  2. Grand Trunk's cross-claims for contribution against Dobson and Prestolite Company ("Prestolite"), the company that sold the Machine to Mulay; and

  3. Grand Trunk's counterclaim against Mulay for payment of freight charges.

**3.** Mulay also presented the alternative of placing the Wehrley deposition under a "protective

order," but that option was clearly inappropriate. It would suggest all discovery as to liability was improper and in violation of some implicit command in the September 30 summary judgment order, but:

  1. Discovery on liability issues was certainly permissible. Grand Trunk's cross-claims against Dobson and Prestolite were pending, and liability had not been resolved on those claims.

  2. In any case no court order had ever limited discovery to investigation of the extent of damages.

  3. Finally the Wehrley deposition had been primarily focused on damages issues anyway.

mary judgment motion because the appellant "had an affirmative duty to file material in opposing ... summary judgment and could not properly file affidavits after summary judgment was granted to his opponent."

This Court concludes that affirmative duty was breached by Grand Trunk, albeit not deliberately. Grand Trunk's asserted new defense [4] to Carmack Amendment liability depends on whether certain dowels connecting the top and bottom of the Machine were in place when Grand Trunk took custody of the Machine, or instead had fallen down into the base of the Machine. Whether Grand Trunk, having failed to advance that defense earlier, was reasonable in that omission depends on whether Grand Trunk was put on notice of that potential defense and could reasonably be expected to have pursued the possibility.

Wehrley's deposition itself shows Grand Trunk had adequate notice. In response to questioning by Grand Trunk's attorney James A. Romanyak, Wehrley testified he, together with Mulay's Ken Munro ("Munro") and Grand Trunk's Milford Anguilm ("Anguilm"), looked for the dowels when the Machine arrived at National for repairs (Wehrley dep. 45):

Q. Did you have any conversation with them [Munro and Anguilm] about missing locator dowels?

A. I might have suggested something about it at that time.

Q. Did you suggest it to Ken Munro?

A. I think so because we looked for them at that particular time.

Q. The three of you looked for them?

A. Yes.

Q. Were you able to find them?

A. No, because they were still on the railroad car and I couldn't see where I wanted to see. But we didn't.

That hunt for the dowels really provided as much notice as a party to commercial litigation can expect to receive from a disinterested witness with knowledge of potentially exculpatory facts.[5]

Grand Trunk's April 5 motion for reconsideration asserts two reasons it was not really in breach of its duty to come forward with evidence on summary judgment:

1. Wehrley never specifically said he *told* Munro and Anguilm what effect the absence of the dowels might have. Instead he used the phrases "I might have suggested" and "I think so." Because the Machine is complex, Munro and Anguilm could not have understood the significance of their search.

2. If Anguilm is chargeable with notice, so is Munro. Grand Trunk and Mulay are thus equally at fault for Grand Trunk's failure to produce the evidence.

Neither of those arguments is persuasive:

1. Grand Trunk's duty to come forward with evidence makes the search for the dowels itself the relevant factor, for at that point Grand Trunk was on notice giving rise to a duty to pursue the issue. Its agent Anguilm should then have posed the same questions to Wehrley that its lawyers put to him some years later at the deposition. Any other view, in which Wehrley would have had to give an express statement of the entire exculpatory scenario to Anguilm, is simply too narrow a reading of the duty to exercise diligence in producing evidence.

2. Mulay of course had no duty (as Grand Trunk did) to produce evidence exculpatory to Grand Trunk.

But this Court cannot fairly end its inquiry with the conclusion Grand Trunk is at fault for its belated production of Wehrley's testimony. If the Opinion were left intact, anomalous results could ensue in this multiparty litigation: After all, the issues of Dobson's liability to Mulay and

---

**4.** This opinion does not pass on the sufficiency of that defense, which remains for another day.

**5.** Anguilm, not Grand Trunk's attorneys, received the notice. This Court's finding that

Grand Trunk is at fault for its belated tendering of evidence is therefore no reflection on the quality of its attorneys' representation here.

Dobson's and Prestolite's liability to Grand Trunk are still open, and Wehrley's testimony might affect the outcome of those issues (though barred from consideration as between Mulay and Grand Trunk). Indeed denying Grand Trunk's motion to vacate summary judgment would be much like subjecting it to a default judgment while ignoring potentially exculpatory evidence. Default is a harsh sanction (see *C.K.S. Engineers, Inc. v. White Mountain Gypsum Co.*, 726 F.2d 1202, 1205 (7th Cir. 1984)), at least where Grand Trunk's conduct was not willful.

Those countervailing considerations caution striking a middle ground between simply granting and simply denying reconsideration of the Opinion. Granting reconsideration, but at the same time requiring Grand Trunk to pay Mulay's attorneys' fees and expenses caused by its failure to produce evidence, achieves that middle ground. Grand Trunk was put on notice of a potential fact issue and did not pursue it. Had the controverted fact issue been posed, there would have been no occasion for Mulay to seek summary judgment.

As it was, Mulay and its attorneys properly saw the questions of which they were aware as purely legal and not factual. They went to the time, trouble and expense of filing and pursuing a summary judgment motion, and in fact obtained a favorable ruling on that motion. Justice requires that if that ruling is now to be vacated, Grand Trunk must reimburse Mulay for the wasted efforts it caused.

Grand Trunk continues to object to the award of fees, asserting this Court is powerless to award attorneys' fees in the absence of bad faith or statutory authorization because the "American Rule" requires

each party to pay its own attorneys.[6] However the Rules have been construed to empower federal courts to condition rulings on the payment of litigation expenses in analogous situations. For example voluntary dismissal of a claim under Rule 41(a)(2) may be conditioned on the payment of attorneys' fees and expenses. *GAF Corp. v. Transamerica Insurance Co.*, 665 F.2d 364, 367–70 (D.C.Cir.1981) (Swygert, J.). And Rule 60(b) permits relief from a final judgment to be granted "upon such terms as are just."[7]

Although not of course directly applicable, 28 U.S.C. § 1927 permits litigation expenses to be awarded against attorneys if they have "multiplie[d] the proceedings in any case unreasonably...." It would be odd (even though possible) to permit that sort of conduct by counsel to cause their being mulcted in damages in the form of opposing counsel's fees, while the identical conduct by a party itself could not bring about the same result.

Here this Court invokes its equitable powers because the interests of justice require it to do so. In *Hall v. Cole*, 412 U.S. 1, 4–5, 93 S.Ct. 1943, 1945–1946, 36 L.Ed.2d 702 (1973) (footnotes omitted) the Supreme Court said:

> Although the traditional American rule ordinarily disfavors the allowance of attorneys' fees in the absence of statutory or contractual authorization, federal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require.

It is true the Court there cited the bad faith exception to the American Rule as the principal example of the courts' equitable power to award attorneys' fees. But the

---

**6.** By objecting only to the fee award on which reconsideration of the Opinion has been based, Grand Trunk picks and chooses the portions of the reconsideration order it likes. But the ability to make Mulay whole is one of the important factors this Court has weighed in the balance in ultimately deciding to grant reconsideration.

**7.** In a different context, Rule 60(b) has been held not to apply to interlocutory orders. See *Bon Air Hotel, Inc. v. Time, Inc.*, 426 F.2d 858,

862 (5th Cir.1970). However the rationale for that holding is that a court should not be *constrained* by the requirements of Rule 60(b) in modifying orders on which no final order has been entered. By contrast, here Grand Trunk contends the interlocutory nature of the Opinion deprives this Court of a power otherwise available under Rule 60(b). That would turn justice—in the language of the Rule, "such terms as are just"—on its head.

bad faith exception includes not only bad faith conduct but also vexatious conduct. See 6 Moore, *Moore's Federal Practice* ¶ 54.77[2], at 1709 (2d ed. 1983) (earlier edition cited in *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 n. 4, 88 S.Ct. 964, 966 n. 4, 19 L.Ed.2d 1263 (1968)); *id.* at 1711 (fee awards "for dominating reasons of justice").

Our Court of Appeals has had no occasion to draw directly on the "interests of justice" exception to the American Rule to award attorneys' fees. Such an award, however, was considered and approved in *Grinnell Brothers, Inc. v. Touche Ross & Co.*, 655 F.2d 725 (6th Cir.1981). There the trial judge disavowed any finding the losing party was in bad faith, but still granted attorneys' fees (*id.* at 727) "in the interest of justice" because the case had been improperly removed to federal court. Thus *Hall v. Cole* justified the award even though the bad faith exception did not.

### Amount of the Award

Mulay seeks $4,334.20 in litigation expenses,[8] and Grand Trunk argues no more than $1,751.50 was reasonably justified. Neither party's submissions have requested an evidentiary hearing or identified any issues that can be resolved only by live testimony.[9] This opinion therefore makes a final determination of Mulay's entitlement (subject only to the possibility referred to in n. 8).

Mulay's $4,334.20 total comprises a thoroughly itemized $3,964 in "attorneys' fees" (including a summer associate's fees) and $370.20 in expenses, itemized by months. Grand Trunk disputes neither the reasonableness of the expenses nor the requested hourly rates. Apart from its challenge in

principle already dealt with, Grand Trunk lodges four objections to Mulay's petition:

1. Mulay's expenses in opposing Grand Trunk's motion to vacate the Opinion were not sufficiently related to its summary judgment motion and should be denied entirely.

2. Mulay's principal attorney in this case, Eric N. Landau ("Landau"), and summer associate Allan M. Bittker ("Bittker") devoted an excessive amount of time—38.5 hours—to researching and drafting Mulay's motion and supporting memorandum. Grand Trunk proposes 16 hours be allowed.

3. Landau's supervisor Francis X. Grossi, Jr. ("Grossi") should have spent only 1 hour, not 2.4 hours, reviewing the motion and memorandum.

4. Landau should have spent no more than 8 hours, not 9.3 hours as he did, preparing Mulay's reply.

Only the second argument has any merit, and Mulay's award will be adjusted accordingly.

As for the first objection, Mulay's opposition to Grand Trunk's motion to vacate is properly chargeable. Like discovery sanctions, the present award "should encompass all expenses, whenever incurred, that would not have been sustained had the opponent conducted itself properly." *Aerwey Laboratories, Inc. v. Arco Polymers, Inc.*, 90 F.R.D. 563, 565–66 (N.D.Ill.1981), recently quoted approvingly in *Tamari v. Bache & Co.*, 729 F.2d 469, 475 (7th Cir. 1984). Here Grand Trunk's failure to produce evidence made its motion to vacate, and therefore Mulay's opposition to it, necessary.

---

**8.** Mulay seeks reimbursement for all expenses arising from its Carmack Amendment summary judgment motion and memoranda. This Court has now vacated the Opinion but has entered no order that Mulay is *not* entitled to summary judgment on the Carmack Amendment. It is possible (though perhaps unlikely) Mulay may renew its motion despite Wehrley's testimony. In that event it would probably be able to reuse most if not all the work already done on the Carmack Amendment. This opinion's findings on the amount of Mulay's entitlement to fees

assume the non-renewal of its motion. If events turn out otherwise, a corrective order will be entered.

**9.** Fees hearings create the potential for fees on fees, needlessly raising the stakes. See *Muscare v. Quinn*, 680 F.2d 42 (7th Cir.1982). Thus parties are most often well advised to submit the question on the papers, as they have done here.

Grand Trunk's second objection requires an evaluation of time spent, always difficult in hindsight. That is particularly true of research time: It is nearly impossible to second-guess how much time was reasonably spent on research. Where as here the services were incurred without contemplation of recovery, and will be borne by the client if not allowed for reimbursement, they should be borne by the party that caused the problem absent some real indication of unreasonableness. Thus the 13.7 hours charged by Bittker for research are allowed as reasonable.

Less difficulty in evaluation is posed by other claimed items. For example the May 25, 1983 conference time (for both Landau and Bittker) will be disallowed because the differential between Bittker's and Landau's hourly rates was minimal (rendering nonexistent the ordinary justification for delegation: the generation of appropriate economies). That conference was really more a matter of the law firm's convenience than anything else. On the propriety of fee awards to cover the expense of such conferences, see *Roe v. City of Chicago*, 586 F.Supp. 513, 514–15 (N.D.Ill.1984).

More important, the total of 23.2 hours for Landau's drafting of the summary judgment motion, where a partner also took 2.4 hours for reviewing and editing, is excessive. There is a meaningful distinction between this Court's ability to review time required for writing and related work and its inability to determine what is reasonable in terms of background research. Therefore 8 hours of Landau's time, at $55 an hour, are disallowed.[10] That brings the total reduction warranted by Grand Trunk's second objection to $513.50.

On the third objection, Grand Trunk's proposed 1 hour limit on Grossi's time ignores the fact he was responsible for editing as well as reading the motion and memorandum. This Court has taken into account the 2.4 hours of Grossi time in reducing by 8 hours the time Landau could reasonably have spent drafting the original version. Consequently no reduction of the Grossi time is called for.

Grand Trunk's final objection is that 9.3 hours could not be reasonably spent preparing a reply, while it concedes 8 hours could be. That kind of fine tuning bespeaks a prescience no more available to Grand Trunk than to this Court. This Court will not accept Grand Trunk's wholly conclusory invitation to impose such an arbitrary reduction.

*Conclusion*

This Court disallows $513.50 of the requested $4,334.20 reimbursement of Mulay's expenses due to Grand Trunk's failure to produce relevant evidence to preclude summary judgment. Grand Trunk is ordered to pay Mulay $3,820.70 by May 21, 1984.

---

10. Mulay's R.Mem. 3 n. 2 and 4 n. 3, objecting to Grand Trunk's recalculation of Mulay's fees after its proposed reductions, misses the fact that when Landau's services were rendered he was billing his time at $55 an hour, rather than $65 an hour as he does today.