**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2183
_____

GERALD CARROLL; KENNETH CROSSWHITE;
RAY FOSTER; CHARLES HOTTINGER;
LAWRENCE SHELDRAKE; RICHARD SHELTRA;
KEVIN STUART; CHRISTOPHER TURNER;
ROBERT WELCH; WILLIAM WHETZEL;
TERRY WILLIAMS; BERN CAPPELLI, LLP

v.

E ONE INC; PIERCE MANUFACTURING INC;
SEAGRAVE FIRE APPARATUS LLC;
FEDERAL SIGNAL CORPORATION


Gerald Carroll; Kenneth Crosswhite; Ray Foster;
Charles Hottinger; Lawrence Sheldrake; Richard Sheltra;
Kevin Stuart; Christopher Turner; Robert Welch;
William Whetzel; Terry Williams; *Bern Cappelli, LLP,
                                        Appellants

*(Pursuant F.R.A.P. 12(a))

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 2-15-cv-00562)
District Judge: Honorable J. Curtis Joyner

Argued on March 22, 2018

Before: SMITH, *Chief Judge,* HARDIMAN, and ROTH,
*Circuit Judges*

(Filed: June 20, 2018)


Joseph J. Cappelli     [ARGUED]
Shawn M. Sassaman
Bern Cappelli
101 West Elm Street, Suite 630
Conshohocken, PA  19428
    *Counsel for Appellants*


Wayne A. Graver
Michael F. McKeon
Lavin O'Neil Cedrone & DiSipio
190 North Independence Mall West, Suite 500
Philadelphia, PA  19106

Jan P. Miller           **[ARGUED]**
Thompson Coburn
One U.S. Bank Plaza
St. Louis, MO 63101
     *Counsel for Appellee*


————————

OPINION

————————


SMITH, *Chief Judge.*

Plaintiffs are firefighters who allege that they suffered hearing losses caused by the loud noise emitted by a manufacturer's fire sirens. A perfunctory investigation conducted by the manufacturer during discovery revealed the firefighters' lawsuit to be clearly time-barred, and also revealed that one firefighter had not even suffered hearing loss attributable to noise exposure. Eventually, Plaintiffs requested the District Court to dismiss the case with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2). In doing so, the District Court awarded attorneys' fees and costs in favor of the manufacturer, making an explicit reference to Plaintiffs' counsel's practice of repeatedly suing the fire siren manufacturer in jurisdictions throughout the country in a virtually identical fashion.

On appeal, Plaintiffs' counsel argues that awarding attorneys' fees and costs is improper under Rule 41(a)(2). Plaintiffs' counsel further challenges the District Court's

3

consideration of the nationwide scope of counsel's litigation tactics—arguing that, in the Rule 41 context, a district court's consideration of litigation in other jurisdictions constitutes reversible error. Plaintiffs' counsel is wrong on both scores.

Although attorneys' fees and costs are typically not awarded when a matter is voluntarily dismissed with prejudice, we conclude that such an award may be granted when exceptional circumstances exist. Exceptional circumstances include a litigant's failure to perform a meaningful pre-suit investigation, as well as a repeated practice of bringing meritless claims and then dismissing them with prejudice after both the opposing party and the judicial system have incurred substantial costs. Because such exceptional circumstances are present in this case, the District Court's award will be affirmed.

## I.

Plaintiffs-Appellants brought suit against Defendant-Appellee Federal Signal Corporation, alleging that they suffered occupational hearing loss due to the "omni-directional design" of Federal Signal's sirens which "unnecessarily exposed the firefighters to dangerous levels of sound." Carroll Br. 5. As Plaintiffs' counsel notes in the first sentence of his opening brief's recitation of the facts, "[t]his action is but one of multiple actions, nationwide, involving Plaintiffs' counsel and Federal Signal in which firefighters are seeking compensation for hearing loss caused by Federal Signal's mechanical Q fire engine siren and its electronic counter part, the e-Q2b." Carroll Br. 9. In its opinion awarding attorneys' fees and costs, the District Court similarly took notice of the

4

aggregate nature of counsel's entrepreneurial litigation strategy:

> The history of this case essentially mirrors that of many other cases instituted by Plaintiffs' counsel against Federal Signal and several of the other original defendants in this action. As defense counsel testified . . . since sometime in 2011 when current Plaintiffs' counsel became lead counsel, there have been some 1300 cases filed in approximately 23 separate jurisdictions asserting claims for high frequency hearing loss which was allegedly caused by exposure to defectively designed fire sirens. In taking more than 100 plaintiff depositions across the country, defense counsel learned that the plaintiffs receive a notice at their fire departments either on a bulletin board or receive a letter through some web-based repository of their unions informing them that free hearing screening is being offered at the union hall. In many instances, those letters and notices have been prepared by Plaintiffs' counsel's law firm.

> Then when the firefighters who decide to accept the free hearing test offer go to the union hall, they go into a room, sometimes two firefighters at a time, where an audiologist puts headphones on them, plays pure tones and they are either directed to raise their hands or push a button when they hear the sounds. Through that

testing, an audiometric result is generated. The firefighters are not told the results of their tests and often do not learn the results of their tests until months or sometimes years later, after they have become part of a lawsuit. The firefighters are not referred to a doctor or advised to wear hearing protection.

Typically, a complaint involving 20–50 plaintiffs per case is then filed within two or three years often almost to the day of the hearing screen. Often, the firefighters do not learn that they are plaintiffs in an action until after suit is filed and they receive something in the mail from Plaintiffs' counsel's law firm. In one case, a Pittsburgh firefighter discovered he had been named as a plaintiff when he heard a television news story about the lawsuit. Frequently the first contact a firefighter plaintiff has with someone from Plaintiffs' counsel's law firm occurs at or around the time of their deposition. Although a number of these cases have gone to trial with some resulting in verdicts for the plaintiffs and some resulting in defense verdicts, there have been other instances in which Federal Signal's attorneys have completed discovery in a matter and sometimes even taken a case to trial when Plaintiffs' counsel dismisses the case.

JA 13–14 (District Court opinion). Although counsel objects to this portion of the District Court's opinion as having inappropriately considered extra-jurisdictional litigation, the

6

thrust of the opinion was more concerned with the history of the specific case before the District Court. A summary of that history follows.

In January of 2015, Plaintiffs brought suit against multiple defendants in the Philadelphia Court of Common Pleas. Although Federal Signal is now the only remaining defendant in this matter, a previous co-defendant removed this civil action to the Eastern District of Pennsylvania in February of 2015.[1] Federal Signal conducted depositions of Plaintiffs from late March to early April of 2015. These depositions revealed two fatal flaws in Plaintiffs' case.

First, deposition testimony revealed all Plaintiffs' claims to be clearly time-barred. JA 15. As the District Court explained:

> [T]his case is somewhat unique in that [Plaintiffs'] Fire Department has, since the 1990's, conducted routine annual audiological screenings of all of its firefighters as part of their required annual physical examinations. As a result, nearly all of the plaintiffs in this suit had been advised many years earlier that they had hearing loss that was very probably caused by the

[1] In addition to suing Federal Signal, the Plaintiffs sued three other manufacturers: E-One, Incorporated, Pierce Manufacturing, Inc., and Seagrave Fire Apparatus, LLC. JA 64–65. Plaintiffs later voluntarily dismissed with prejudice all of their claims against those three companies.

loud noises to which they were exposed on the job and that they should be wearing hearing protection. Consequently, Plaintiffs' claims were obviously time-barred when they filed in or around January 2015.

JA 14–15 (footnote omitted). The second fatal flaw uncovered during discovery was that one of the Plaintiffs, Christopher Turner, did not suffer from hearing loss attributable to noise exposure.[2] JA 15 n.1. As the District Court astutely pointed out, "had Plaintiffs' counsel spoken with the individual plaintiffs or conducted any other type of investigation prior to commencing this litigation, [counsel] would have learned these facts." JA 15.

After discovery revealed these flaws in Plaintiffs' case, Federal Signal wrote to Plaintiffs' counsel on May 10, 2016, demanding voluntary dismissal with prejudice and informing Plaintiffs' counsel that Federal Signal would be seeking fees and costs attributable to defending against Turner's baseless claims. JA 271–73. Plaintiffs' counsel countered with an offer to voluntarily dismiss all of the claims with prejudice so long as Federal Signal agreed to waive costs for all plaintiffs except for Turner. On May 23, 2016, Federal Signal rejected that offer, countering with a proposal to stipulate to a voluntary dismissal upon repayment of the then still nominal costs attributable to litigating the meritless matter, as well as a

---

[2] Although Turner's audiograms revealed that he suffered from hearing loss, it was not hearing loss attributable to loud noises.

payment of fees associated with defending against Turner's allegations.[3] JA 274–75. In its March 23rd letter, Federal Signal explained that it had rejected counsel's offer, choosing instead to counter-offer, because of Plaintiffs' counsel's "failure to conduct any diligence regarding the legal viability of the individual cases or to otherwise properly screen in the first place." JA 274.

Plaintiffs' counsel ignored Federal Signal's counter-offer, and on May 31, 2016—without seeking leave of the District Court—filed a "Notice of Dismissal," asking the Clerk of Court to "mark the claims of all Plaintiffs as being dismissed *without* prejudice to all parties in this action." JA 77 (emphasis added). As we explain in greater detail below, this "Notice of Dismissal" was improper under Rule 41.[4] By that point,

---

[3] Federal Signal's counter-offer sought $7,871.10 in fees and costs, or approximately three percent of the $255,646.95 that it ultimately requested the District Court to award. The District Court awarded $127,823.47, which was half of that ultimate request. Neither side challenges the amount of the District Court's award on appeal. JA 4, 18.

[4] While Rule 41(a)(2) permits a plaintiff to voluntarily dismiss a claim with a court's order, Rule 41(a)(1) permits a plaintiff to voluntarily dismiss a claim without a court order if the plaintiff does so "before the opposing party serves either an answer or a motion for summary judgment," or with a "stipulation of dismissal signed by

discovery had already closed, all of the defendants had answered the complaint, and the parties had not agreed to a stipulation of dismissal.

One month later, on June 30, 2016, Federal Signal filed a motion seeking fees and costs, and further challenging Plaintiffs' counsel's ability to "voluntarily" dismiss the firefighters' claims *without* prejudice. JA 79–89. On July 8, Plaintiffs' counsel opposed Federal Signal's request for fees and costs, but was by that point agreeable to dismissing the matter *with* prejudice. JA 7, 447–50. Curiously, on July 21, the Clerk of Court entered an order dismissing the action "with prejudice, pursuant to agreement of counsel without costs." JA 459. It is unclear who informed the Clerk of Court that the parties had "agreed" to a dismissal without costs, as Federal Signal had repeatedly requested attorneys' fees and costs in writing, and had already filed the instant action to collect those fees and costs. The District Court vacated the Clerk's order, as erroneously entered, on July 27, 2016.

On September 6, 2016, the District Court issued a memorandum concluding that, because the defendants had already filed answers to the complaint prior to Plaintiffs' counsel's May 31 "Notice of Dismissal," the firefighters "no longer had the option to voluntarily dismiss" their claims without the District Court's permission. JA 464. The District Court explained that Plaintiffs had therefore "clearly erred in unilaterally filing a notice addressed to the Clerk of Court

---

all parties who have appeared." FED. R. CIV. P. 41(a)(1)(A)(i–ii).

10

asking that their claims be marked as being dismissed without prejudice." JA 464. Nonetheless, the District Court explained further that the "facts certainly militate in favor" of granting dismissal under Federal Rule of Civil Procedure 41(a)(2). JA 467. That Rule permits a court to dismiss an action "at the plaintiff's request . . . on terms that the court considers proper." FED. R. CIV. P. 41(a)(2). In order to develop the proper terms for dismissal, the District Court stayed Federal Signal's motion for fees and costs pending an evidentiary hearing. JA 467–70. Hearings were held on both November 1, 2016 and December 20, 2016. JA 532, 656. A defense attorney for Federal Signal testified; Plaintiffs' counsel chose not to offer any witnesses.

On April 25, 2017, the District Court granted Federal Signal's Motion for Fees and Costs. JA 5. The memorandum accompanying that order set out the procedural history of the case, including the District Court's determination in its September 6, 2016 decision that Plaintiffs had erred in filing the notice of dismissal without prejudice. The District Court additionally explained that "Federal Signal had adduced sufficient evidence that Plaintiffs' counsel had failed to undertake any pre-suit investigation into the viability of the claims asserted." JA 8.

The District Court then recognized the "general rule" that attorneys' fees are typically not available "when a plaintiff dismisses an action with prejudice absent exceptional circumstances," JA 10, and further explained that such "circumstances include an abuse of the judicial process or bad faith conduct." *Id.* The Court concluded that "there is no question that Rule 41 authorizes a court to award costs and attorneys' fees as a condition of voluntary dismissal and

11

numerous courts have done so where a voluntary dismissal has been granted." JA 11.

Recognizing that any fee award must be compensatory rather than punitive, and mindful that the dismissal was with prejudice, the District Court awarded attorneys' fees and costs in the amount of $127,823.47, only half of the amount sought by Federal Signal. JA 16–18. The Court directed that the action "shall be dismissed with prejudice." JA 18–19. This timely appeal followed.

## II.

The District Court exercised jurisdiction pursuant to 28 U.S.C. § 1332 and § 1441. We have final order jurisdiction under 28 U.S.C. § 1291. We review a Rule 41(a)(2) order granting an award of attorneys' fees and costs for an abuse of discretion. *Westinghouse Elec. Corp. v. United Elec. Radio & Mach. Workers of Am.*, 194 F.2d 770, 771 (3d Cir. 1952). We review *de novo* any questions of law that underlie a district court's Rule 41(a)(2) analysis. *See AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1527 (10th Cir. 1997).

## III.

Though Plaintiffs' counsel originally intended his May 31, 2016 "Notice of Dismissal" to be filed pursuant to Federal Rule of Civil Procedure 41(a)(1),  he now concedes "this was improper and the action should have been dismissed pursuant to Rule 41(a)(2)." Carroll Br. 22. We agree.

Rule 41(a) provides:

12

(a) **Voluntary Dismissal**.

 (1) **By the Plaintiff**.

  (A) **Without a Court Order**. Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:

   (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or

   (ii) a stipulation of dismissal signed by all parties who have appeared.

  (B) **Effect**. Unless the notice or stipulation states otherwise, the dismissal is without prejudice. But if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.

 (2) **By Court Order; Effect**. Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court

13

considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

FED. R. CIV. P. 41.[5] Because Federal Signal had already filed its answer prior to Plaintiffs' counsel's May 31, 2016 "Notice to Dismiss," and had not stipulated to dismissal, Rule 41(a)(1) was not applicable. This is because Rule 41(a)(1) requires that

---

[5] The current text of Rule 41(a)(2) was the product of the 2007 amendments to the civil rules. The predecessor to this rule provided: "An action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." This change was considered non-substantive. *See* 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 2361 (3d ed. 2008) ("Federal Rule 41 has been amended seven times since it originally was promulgated in 1938. The amendments, however, have been substantively insignificant. It is doubtful if a single case would have been decided differently if the rule stood as it did in 1938 . . ."). Accordingly, we consider the case law pertaining to the earlier version of this Rule to be instructive.

14

such a filing be submitted either "before the opposing party serves . . . an answer," Rule 41(a)(1)(A)(i), or be filed along with "a stipulation of dismissal signed by all parties who have appeared." Rule 41(a)(1)(A)(ii). In light of Rule 41(a)(1)'s inapplicability, Plaintiffs' counsel's "Notice to Dismiss" properly falls within the scope of Rule 41(a)(2), which allows an action to be "dismissed at the plaintiff's request only by court order, on terms that the court considers proper." The District Court therefore properly considered dismissal under Rule 41(a)(2) rather than Rule 41(a)(1).

## IV.

Under Rule 41(a)(2), the District Court was permitted to dismiss the case "on terms that the court considers proper." FED. R. CIV. P. 41(a)(2). In exercising that broad grant of discretion, the District Court concluded that its terms would include an award of attorneys' fees and costs. As noted above, in coming to this conclusion the District Court recognized the "general rule [that] defendants are not permitted to recover fees when a plaintiff dismisses an action with prejudice absent exceptional circumstances." JA 10. This general rule acknowledges that, in the ordinary case, dismissal with prejudice protects a defendant from otherwise repetitive litigation, whereas dismissal without prejudice leaves a defendant at risk of re-litigating dismissed issues. But this general rule was not applied to the case at hand because, as the District Court put it, "this case is unusual and it therefore calls for an unusual solution." JA 18.

15

## A.

This Court has yet to provide guidance as to when awarding attorneys' fees and costs is appropriate under a Rule 41(a)(2) dismissal with prejudice. We have, however, acknowledged a district court's ability to attach conditions to Rule 41(a)(2) dismissal orders. In *Raab v. City of Ocean City*, we considered a district court's ability to attach two terms to its order of dismissal: an explicit incorporation of a settlement agreement between the parties, and the requirement that the district court retain jurisdiction over that agreement. *Raab v. City of Ocean City*, 833 F.3d 286, 294 (3d Cir. 2016). An appellee in that case argued that the district court's *sua sponte* retention of jurisdiction was invalid because the parties did not consent to such a retention of jurisdiction over their agreement. In addressing that argument we noted a distinction between Rule 41(a)(1) and Rule 41(a)(2). With the former, the parties' consent to a district court's retention of jurisdiction is typically sought; with the latter, "the Supreme Court has indicated [that] district courts may retain jurisdiction without the parties' consent." *Id.* at 296.

In *Raab*, we referred to *Kokkonen v. Guardian Life Insurance Co. of America*, in which the Supreme Court explained that "[w]hen the dismissal is pursuant to [Rule] 41(a)(2) . . . the parties' compliance with the terms of the settlement contract (or the court's 'retention of jurisdiction' over the settlement contract) may, in the court's discretion, be one of the terms set forth in the order." *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 381 (1994). The *Raab* panel declared that "*Kokkonen* made clear that, for court dismissals made pursuant to [Rule] 41(a)(2), a district court

16

may, in its discretion, 'attach conditions to the parties' stipulation of dismissal'—including the retention of jurisdiction over the settlement agreement." *Raab*, 833 F.3d at 296 (citation omitted).

Other courts have more directly addressed a district court's ability to award attorneys' fees and costs as a proper term of dismissal under Rule 41(a)(2).[6] In doing so, courts have often recognized the same general principle that the District Court recognized in this case: although attorneys' fees and

---

[6] One persuasive example comes from the Supreme Court of the State of Hawaiʻi, where the Court held that, under Hawaiʻi District Rules of Civil Procedure ("HDCRCP") Rule 41(a)(2), "a trial court has discretion to impose terms and conditions, including attorney's fees and costs" as long as the court provides the plaintiff with the opportunity to either withdraw the request for dismissal or accept the court's terms. *Tagupa v. VIPDesk*, 353 P.3d 1010, 1020 (Haw. 2015). The *Tagupa* Court noted that "[w]hile this court has not previously addressed whether attorney's fees may be imposed as a term or condition of voluntary dismissal under HDCRCP Rule 41(a)(2), there is abundant authority interpreting comparable provisions of the Federal Rules of Civil Procedure," and since HDCRCP Rule 41(a)(2) was "essentially identical" to FRCP Rule 41(a)(2), "cases interpreting and applying HRCP Rule 41(a)(2) and FRCP Rule 41(a)(2) may be consulted for guidance in interpreting HDCRCP Rule 41(a)(2)." *Tagupa*, 353 P.3d at 1018.

costs may be frequently awarded when dismissal is *without* prejudice, attorneys' fees and costs are not typically appropriate when dismissal is *with* prejudice. Importantly, however, these cases do not hold that fees can never be awarded in light of extraordinary circumstances. Indeed, courts have held that awarding attorneys' fees and costs as a term of a Rule 41(a)(2) dismissal may be appropriate where such fees and costs were unnecessarily incurred.[7]

One case applying the general rule against awarding attorneys' fees and costs when dismissal is with prejudice comes from the Sixth Circuit. In *Smoot v. Fox*, 353 F.2d 830 (6th Cir. 1965), the Court explained that "cases permit allowance of attorney's fees against the dismissing party where the action is dismissed without prejudice." *Smoot*, 353 F.2d at 833. This was contrasted against "dismissal with prejudice," which "finally terminates the cause" meaning that "the defendant cannot be made to defend again." *Id*. After noting this distinction, the Sixth Circuit cast doubt on the appropriateness of awarding attorneys' fees and costs when

---

[7] For example, in *GAF Corp. v. Transamerica Insurance Co.*, 665 F.2d 364, 367 (D.C. Cir. 1981) (footnote omitted), the D.C. Circuit explained that the purpose of the "terms and conditions" clause in an earlier version of Rule 41(a)(2) was "to protect a defendant from any prejudice or inconvenience that may result from a plaintiff's voluntary dismissal. Attorneys' fees and costs are commonly awarded as one such 'term and condition' for a voluntary dismissal, for those costs were undertaken unnecessarily in such a case."

18

dismissal was with prejudice, citing to a district court's holding "that attorney's fees are not proper where the dismissal is with prejudice." *Id.* (citing *Lawrence v. Fuld*, 32 F.R.D. 329 (D. Md. 1963)).

The Seventh Circuit has similarly questioned the appropriateness of awarding attorneys' fees and costs when dismissal is with prejudice. In *Cauley v. Wilson*, 754 F.2d 769 (7th Cir. 1985), the Seventh Circuit considered a challenge to an award of attorneys' fees granted in response to an oral Rule 41(a)(2) motion for voluntary dismissal without prejudice. The Court noted that "[f]ees are not awarded when a plaintiff obtains a dismissal *with prejudice* because the 'defendant cannot be made to defend again.'" *Cauley*, 754 F.2d at 772 (quoting *Smoot*, 353 F.2d at 833). This was to be distinguished from "the case of a dismissal *without prejudice*" since there "the defendant may have to defend again at a later time and incur duplicative legal expenses." *Id.* Applying "these general standards" to the fees awarded in the motion for voluntary dismissal without prejudice then before the Court, the Seventh Circuit explained that it would "affirm the fees award unless the award constitutes an abuse of discretion by the district court." *Id.* But because the "request for attorney's fees lacked sufficient detail to permit the district court to determine a reasonable award," the Seventh Circuit remanded the case so that the district court could "receive additional evidence and to reconsider the fees issue."[8] *Id.*

---

[8] In what now seems to be an almost quaint reference, the Seventh Circuit also "question[ed] . . . whether a lawyer

19

While *Smoot* and *Cauley* illustrate a general hesitation to award attorneys' fees and costs when dismissal is with prejudice, we read these cases as simply stating a general rule. Indeed, this general rule is one that courts in this circuit must similarly adhere to. But our recognition of this general rule does not end our analysis. As with many areas of the law, limited and principled exceptions to general rules often develop over time.

Other circuits have distinguished Rule 41(a)(2) dismissals with and without prejudice in a more textured manner. These courts have explained that, although a dismissal with prejudice does not ordinarily warrant an award of fees and costs, there are times when such an award will be appropriate. For example, in *Colombrito v. Kelly*, 764 F.2d 122 (2d Cir. 1985), the Second Circuit explained that although an award of attorneys' fees and costs is not ordinarily paired with a dismissal with prejudice, the Second Circuit's "reading of Rule 41(a)(2) does not altogether foreclose fees in the event of a dismissal with prejudice." *Id.* at 134. Specifically, "such an award might be one of the appropriate 'terms or conditions' authorized by Rule 41(a)(2), *e.g.*, if a litigant had made a practice of repeatedly bringing potentially meritorious claims and then dismissing them with prejudice after inflicting substantial litigation costs on the opposing party and the judicial system." *Id.* at 134–35. Because the Second Circuit concluded that such circumstances were not present in the case

---

less than three years out of law school was justified in charging $100 per hour in 1975." *Cauley*, 754 F.2d at 772.

20

before it, the Court reversed the district court's award. *Id.* at 135.

Similarly, in *AeroTech, Inc. v. Estes*, the Tenth Circuit considered whether a district court had "abuse[d] its discretion in declining to award attorneys' fees as a 'term or condition' under Rule 41(a)(2) when a plaintiff dismisse[d] its action with prejudice." *AeroTech*, 110 F.3d 1523, 1528 (10th Cir. 1997). The Tenth Circuit began its analysis by noting that it "continue[d] to adhere to the rule that a defendant may not recover attorneys' fees when a plaintiff dismisses an action with prejudice absent exceptional circumstances." *Id.* That court went on to clarify that "[o]f course, when a litigant makes a repeated practice of bringing claims and then dismissing them with prejudice after inflicting substantial litigation costs on the opposing party and the judicial system, attorneys' fees might be appropriate." *Id.* Because the Tenth Circuit found that "such an exceptional circumstance [wa]s not present," the Court "conclude[d] that the district court did not abuse its discretion in denying attorneys' fees under Rule 41(a)(2)."[9] *Id.*

---

[9] The Tenth Circuit has reaffirmed its rationale in *AeroTech*. *Steinert v. Winn Grp., Inc.*, 440 F.3d 1214, 1222 (10th Cir. 2006) ("But if the dismissal is with prejudice, attorney fees may be imposed under Rule 41(a)(2) only in 'exceptional circumstances.' *AeroTech*, 110 F.3d at 1528. An example of such a circumstance is 'when a litigant makes a repeated practice of bringing claims and then dismissing them with prejudice after inflicting substantial litigation costs on the opposing party and the judicial system.'" (citation omitted)); *Ryan v. Donley*, 511 F. App'x 687, 692 (10th Cir. 2013)

21

We conclude, in step with our colleagues on the Second and Tenth Circuits, that although attorneys' fees and costs should not typically be awarded in a Rule 41(a)(2) dismissal with prejudice, exceptional circumstances may sometimes warrant granting such an award. The facts of the instant case exemplify such exceptional circumstances: a litigant's failure to perform a meaningful pre-suit investigation, coupled with a litigant's repeated practice of bringing claims and dismissing them with prejudice after inflicting substantial costs on the opposing party and the judicial system.

**B.**

As to a litigant's failure to perform a meaningful pre-suit investigation, we start by noting that this standard constitutes a high bar for litigants to meet. The run-of-the-mill case will not meet such a bar, even when a jurist believes that a more thorough pre-suit investigation should have been conducted. The instant case, however, provides an example of the very sort of exceptional circumstances warranting an award of attorneys' fees and costs, despite a dismissal with prejudice.

We turn first to the circumstances surrounding Turner, a plaintiff who did not even suffer the type of hearing loss alleged in the underlying lawsuit. Had Plaintiffs' counsel even looked at Turner's audiograms, he would have recognized the

---

(unpublished) ("Although *AeroTech* acknowledged that a fee award 'might be appropriate' if there were exceptional circumstances, this case does not present any such exceptional circumstances.") (internal citation omitted); *see also* JA 10–11 (citing *Steinert*, 440 F.3d at 1222).

22

deficiency in the claim. JA 260 ("None of [Turner's] hearing tests, including the November 28, 2011 hearing test sponsored by [Plaintiffs' counsel's law firm] shows any features consistent with noise-induced hearing loss."). Plaintiffs' counsel conceded this point at oral argument. Oral Argument Transcript at 12–13 ("Judge . . . you can have high frequency hearing loss that an expert would say is not noise related . . . but caused by conduction . . . [as] somebody who looks at audiograms I will tell you that [Turner's hearing loss] is most likely caused by conductive hearing loss."); *id.* at 12 ("[C]learly [Turner's] audiogram was more of a conductive nature.").

When Federal Signal wrote to Plaintiffs' counsel on May 10, 2016, demanding voluntary dismissal with prejudice, Federal Signal alerted Plaintiffs' counsel to the fact that Turner's audiograms revealed that he "does not have noise-induced hearing loss." JA 273. Federal Signal further wrote that, had Plaintiffs' counsel "reviewed Turner's audiogram at any point before filing this lawsuit, you would have realized this." JA 273. Moreover, Federal Signal's letter memorializes a conversation that had occurred between opposing counsel "[o]n the morning of March 23, 2016, while there was still sufficient time to cancel" Turner's deposition. JA 273. In that conversation, Federal Signal explained to Plaintiffs' counsel that if he "declined to dismiss Turner and instead forced [Federal Signal] to go forward with his deposition, [Federal Signal] would seek our fees and costs." JA 273. Plaintiffs' counsel, fully aware that Turner had no viable claim, still forced Federal Signal to go forward with depositions.

23

But though the circumstances surrounding Turner provide the most egregious evidence of counsel's failure to conduct a meaningful pre-suit investigation, it is not the only evidence supporting an extraordinary circumstances determination. As counsel for Federal Signal noted in one of the evidentiary hearings conducted by the District Court, depositions revealed that many of the plaintiffs freely acknowledged that they had participated in annual hearing checks for many years before the complaint was filed, during which they were notified that loud noise likely caused their hearing loss. JA 554. Plaintiffs' counsel did not take the opportunity to put on any evidence to refute this testimony during either of the two evidentiary hearings conducted by the District Court. JA 15 (referring to the evidence which was "undisputed and wholly uncontradicted by the plaintiffs"). Nor does it appear counsel could have done so, since even a brief discussion with these clients in advance of filing would have alerted counsel to the reality that Plaintiffs knew about their hearing loss for multiple years in advance, making their claims obviously time-barred.[10]

---

[10] Plaintiffs' complaint sought to hold Defendants either strictly or negligently liable for damages allegedly caused by Defendants' products. Under Pennsylvania law, Plaintiffs would have ordinarily been required to commence their actions within two years of their injury. 42 PA. CONS. STAT. §§ 5521(b), 5524(2). Pennsylvania, however, recognizes the "discovery rule," which tolls the running of a statute of limitations for "that period of time during which a party who has not suffered an immediately ascertainable injury is

One plaintiff, for example, confirmed that he had been aware of his hearing results since 2011, explaining that his results were "[n]ot good," JA 210, and that he had been referred to a specialist because he was losing his hearing. JA 211. Similarly, Gerald Carroll confirmed that he had been told of his hearing loss since at least 2011. JA 231–32. Indeed, Carroll learned that his hearing loss was likely attributable to his job as a firefighter no later than 2011. JA 232. The depositions of other plaintiffs revealed similar issues.[11]

---

reasonably unaware he has been injured, so that he has essentially the same rights as those who have suffered such an injury." *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005). In light of the discovery rule, Plaintiffs might have been excused from commencing their claims if they had not learned of their injury until much later. But as the District Court noted, since "nearly all of the plaintiffs in this suit had been advised many years earlier that they had hearing loss that was very probably caused by the loud noises to which they were exposed on the job and that they should be wearing hearing protection . . . Plaintiffs' claims were obviously time-barred when they were filed in or around January, 2015." JA 14–15 (footnote omitted). Plaintiffs' counsel concedes that his clients' claims were time-barred. Carroll Br. 31 ("Clearly Dr. Malomo's testimony was enough to lead the trier of fact [to find] that both prongs of the discovery rule test were satisfied and that action was no longer tenable.").

[11] For example, one plaintiff noticed his hearing loss when he was riding ambulances in either 1975 or 1976. JA 168. Another plaintiff acknowledged that his ringing in the ears started

25

It is unremarkable that Plaintiffs did not exhibit an understanding of Pennsylvania tort law sufficient to permit them to conclude that their claims were time-barred. Any plaintiff would have likely learned of that reality only after discussing the matter with counsel. In stark contrast to the routine discussions that an attorney should have with a client before filing suit, Carroll clarified in his deposition that he learned of his participation in this lawsuit only after he received an e-mail from Plaintiffs' law firm. JA 227. Such an uninformed rush to the courthouse skirts the norms of proper legal practice in pursuit of the fruits of aggregation. It should not be condoned.

Plaintiffs' counsel argues that he was not put on notice of the time-barred nature of his clients' claims until the deposition of Dr. Malomo, a medical director of the police and fire clinic that provided annual hearing tests to Plaintiffs. Carroll Br. 6; JA 234–37. But even if true, it only provides further evidence of counsel's failure to conduct a meaningful pre-suit investigation. Rather than wait for the deposition of Dr. Malomo, counsel could simply have asked his clients during a routine interview when they had first discovered that they were suffering from hearing loss attributable to their jobs as firefighters. By failing to do so, counsel shifted the costs of a pre-suit investigation onto Federal Signal by requiring Federal Signal to take depositions in order to ask Plaintiffs the

within the last ten years, and that he had been told at his yearly physicals over those years that he had failed his hearing tests. JA 183–85.

26

very questions that their own lawyer should have asked prior to filing suit.

Plaintiffs' counsel argues that the District Court inappropriately took him "to task for allegedly not conducting a proper investigation even though all parties recognize that [Plaintiffs] are subject to a hearing program that has no equal in any of the fire departments from which these [nationwide] claims have arisen." Carroll Br. 30. Not so. The fact that Plaintiffs' fire department conducts annual hearing examinations, unlike other departments throughout the country, does not excuse counsel from speaking to his own clients before filing a lawsuit on their behalf. It highlights the importance that counsel treat each individual case in this aggregate litigation as just that, its own *individual* case. Neither this panel nor the District Court has pronounced judgment as to whether Plaintiffs' counsel exhibited the characteristics of a "good" or "bad" lawyer during this litigation. What we can say, however, is that this case is an example of some of the excesses of modern mass tort litigation—when attention to an individual case is sacrificed for the sake of pursuing mass filings. In granting an award, the District Court appropriately offset some of the costs incurred by Defendants which resulted from Plaintiffs' counsel's failure to pay attention to detail.

## C.

In awarding attorneys' fees and costs, the District Court's analysis did more than take account of the lack of meaningful pre-suit preparation. Specifically, the District Court considered circumstances that extended beyond the geographic boundaries that make up the Eastern District of

Pennsylvania. Plaintiffs' counsel makes much of this portion of the District Court's opinion, going as far as stating that the District Court "appoint[ed] itself the policeman of this nationwide litigation" by "unilaterally usurp[ing] the powers of the other courts." Carroll Br. 25–26. Putting aside counsel's overheated rhetoric, we conclude that the District Court did not abuse its discretion when it explicitly considered the entirety of this "nationwide litigation."

Far from seeking "any excuse to impose[] what would be the equivalent of sanctions on Plaintiff[s'] counsel," Carroll Br. 25, the District Court properly took notice of how the case before it fit within the larger network of cases brought by Plaintiffs' counsel throughout the country. In doing so, the District Court acted in accord with the reasoning of the Second Circuit in *Colombrito*, and the Tenth Circuit in *AeroTech*— courts that have explicitly made clear that attorneys' fees and costs may be appropriately awarded, despite dismissal with prejudice, in those rare instances when a litigant repeatedly brings and dismisses claims with prejudice after inflicting substantial costs on the opposing party and the judicial system.[12] The District Court concluded that that exception

[12] *Colombrito v. Kelly*, 764 F.2d 122, 134–35 (2d Cir. 1985) ("Conceivably such an award might be one of the appropriate 'terms or conditions' authorized by Rule 41(a)(2), *e.g.*, if a litigant had made a practice of repeatedly bringing potentially meritorious claims and then dismissing them with prejudice after inflicting substantial litigation costs on the opposing party and the judicial system."); *AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1528 (10th Cir. 1997) ("Of course, when a litigant makes

28

should apply to the case at hand, and we conclude that the Court did not abuse its discretion in doing so. *See, e.g.*, JA 14 (referring to "instances in which Federal Signal's attorneys have completed discovery in a matter and sometimes even taken a case to trial when Plaintiffs' counsel dismisses the case.").

Plaintiffs' counsel attempts to limit this exception to the general rule against awarding attorneys' fees and costs. Specifically, Plaintiffs' counsel argues that a district court should only be permitted to inquire into abusive litigation practices that occur within the district court's own jurisdiction. *See* Carroll Br. 24. To the extent that our sister circuits were unclear on this point, we take this opportunity to clarify that a district court in this Circuit need not restrict its inquiry into litigation activity to any single jurisdiction. In cases like the one at hand, where counsel has made a habit of filing essentially identical claims in multiple jurisdictions, and has voluntarily dismissed those claims after their opposing party (and the judiciary) have incurred substantial costs, a district court may, in its discretion, give weight to such facts when considering terms of dismissal under Rule 41(a)(2). To hold otherwise would be to permit counsel to frivolously expose their adversaries to unnecessary litigation costs. We will not

_____

a repeated practice of bringing claims and then dismissing them with prejudice after inflicting substantial litigation costs on the opposing party and the judicial system, attorneys' fees might be appropriate.").

29

require district courts to wear blinders when exercising the broad discretion afforded them under Rule 41(a)(2).

Finally, Plaintiffs' counsel argues in the alternative that if "evidence of other actions is somehow relevant to the District Court's decision . . . . Plaintiffs' counsel would direct the Court's attention to the fact that Federal Signal has sought fees and costs in Philadelphia Common Pleas for improper dismissal and its motions were denied by the Court." Carroll Reply Br. 9. As Plaintiffs' counsel put it in his opening brief, "[l]ogically, if the Court accepted the evidence, proffered by Federal Signal of Plaintiffs' counsel's litigation strategy in other jurisdictions, it should have taken heed of the results of Federal Signal's motions for fees and costs in those jurisdictions." Carroll Br. 21. Perhaps so. But while it might be worthwhile in a particular case for a district court to consider whether other courts have found it appropriate to award fees and costs, a district court is not bound by the decisions of other state and federal trial courts throughout the country. After conducting two evidentiary hearings in order to determine the appropriateness of awarding attorneys' fees and costs in *this* case, the District Court was free to exercise its discretion in deciding whether granting the request for fees and costs was appropriate.

## V.

Although attorneys' fees and costs are typically not awarded when a matter is voluntarily dismissed with prejudice under Rule 41(a)(2), we conclude that such an award may be granted when exceptional circumstances are demonstrated. Exceptional circumstances include a litigant's failure to

30

perform a meaningful pre-suit investigation, and a repeated practice of bringing claims and dismissing them with prejudice after inflicting substantial costs on the opposing party and the judicial system. As those exceptional circumstances were present in this case, we conclude that the District Court did not abuse its discretion in awarding attorneys' fees and costs. The District Court's judgment will be affirmed.